An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

K.C. KEITH COULTER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61106

**FILED**

SEP 1 8 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of one count of burglary while in possession of a firearm, two counts of robbery with the use of a deadly weapon, two counts of first-degree kidnapping with the use of a deadly weapon, one count of first-degree murder with the use of a deadly weapon, one count of attempted murder with the use of a deadly weapon, and one count of battery with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Keith Coulter's conviction arises from an incident where two men entered Joseph Smalley's apartment, detained and robbed its occupants, and killed Smalley. One man battered and attempted to kill another occupant of the apartment. Coulter and his codefendant, Eugene Ross, were tried together and convicted.

The issues on appeal are: (1) whether irregular events that occurred before and during trial violated Coulter's right to a fair trial and (2) whether the district court abused its discretion by not severing Coulter's and Ross's trials.[1]

---

[1]Because each of these issues warrants the reversal and remand of Coulter's convictions, we do not consider other issues raised in this appeal.

15-28307

*Significant irregular events impaired Coulter's right to a fair trial*

"A criminal defendant has a fundamental right to a fair trial secured by the United States and Nevada Constitutions." *Watters v. State*, 129 Nev., Adv. Op. 94, 313 P.3d 243, 246 (2013) (internal quotations omitted). The district court has a duty to "protect the defendant's right to a fair trial" and to "provid[e] order and decorum in trial proceedings." *Rudin v. State*, 120 Nev. 121, 140, 86 P.3d 572, 584 (2004) (internal quotations omitted); *see also United States v. Evanston*, 651 F.3d 1080, 1091 (9th Cir. 2011) (stating that the district court is to manage the trial so as to avoid causing "a significant risk of undermining the defendant's due process rights to a fair trial and impartial jury").

An occurrence that "'[is] so intrinsically harmful [to the concept of a fair trial] [constitutes a structural error that] require[s] automatic reversal . . . without regard to their effect on the outcome [of the proceeding].'" *Knipes v. State*, 124 Nev. 927, 934, 192 P.3d 1178, 1182-83 (2008) (second and fifth alterations in original) (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)); *see also Cortinas v. State*, 124 Nev. 1013, 1024, 195 P.3d 315, 322 (2008) (observing that a structural error "affect[s] the very framework within which the trial proceeds" (internal quotations omitted)). Thus, an incident or incidents that significantly undermine a defendant's right to a fair trial can be structural error and require automatic reversal of a conviction.

In the present case, there were significant incidents that potentially affected the fairness of Coulter's trial. Specifically, several jury irregularities occurred, including a juror's outburst and contempt proceedings, a juror's conversation with unknown individuals at a bar about the other juror's contempt proceedings, and improper

communication between Ross's mother and a juror. In the most significant of these juror-related incidents, Ross's mother approached the assembled jurors in the morning before that day's trial proceedings and borrowed a juror's cell phone. Ross's mother then placed a call to a prospective witness in the presence of multiple jurors. Finally, Ross's mother attempted to pay the juror with one-half of a cigarette. The district court did not remove any juror for this incident.

Subsequent to the incident involving Ross's mother, the district court confiscated the juror's cell phone and held a hearing outside of the jury's presence. During the hearing, the district court answered a call placed to the confiscated cell phone. This call originated from the number that Ross's mother had called, and the district court attempted to speak with the caller. The district court then detained Ross's mother and initiated contempt proceedings against her.

While none of these irregularities may have individually impaired Coulter's right to a fair trial or the jury's ability to be fair and impartial, they collectively undermined Coulter's right to a fair trial to the point that they "affect[ed] the very framework within which the trial proceed[ed]." *Cortinas*, 124 Nev. at 1024, 195 P.3d at 322; *cf. Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) ("The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." (internal quotations omitted)). Thus, because a series of irregularities occurred during Coulter's trial, we necessarily reverse and remand Coulter's convictions.

*The district court abused its discretion by denying Coulter's motion to sever his and Ross's trials*

We review the district court's denial of Coulter's motion to sever his and Ross's trials for an abuse of discretion. *See Chartier v. State*, 124 Nev. 760, 764, 191 P.3d 1182, 1185 (2008). Severance is appropriate "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 765, 191 P.3d at 1185 (internal quotations omitted); *see also* NRS 174.165(1) (providing that severance is appropriate to prevent prejudice to a defendant or the State). One way that a joint trial may be prejudicial to a defendant is when "defenses [are] antagonistic to the point that they are 'mutually exclusive.'" *Rowland v. State*, 118 Nev. 31, 45, 39 P.3d 114, 122 (2002). "Defenses are mutually exclusive when the core of the codefendant's defense is so irreconcilable with the core of [the defendant's] own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." *Marshall v. State*, 118 Nev. 642, 646, 56 P.3d 376, 378 (2002) (alteration in original) (internal quotations omitted).

Here, Ross and Coulter each presented defenses based on the theories that each was respectively not at the scene of the crime and did not commit the crimes at issue. To support their respective theories, Ross and Coulter each developed evidence that the other defendant was the person observed wearing a red beanie that was subsequently found near the crime scene. Ross also attempted to develop evidence suggesting that Coulter had possession of key pieces of physical evidence and was one of the men who committed the crimes. Specifically, Ross testified that on the day before the crimes, he lent his vehicle to Coulter and that Coulter did

not return the vehicle's keys until the morning after the crimes were committed. Ross's vehicle was found near the crime scene on the morning after the crimes occurred. Ross also testified that when lending his vehicle to Coulter, he advised Coulter that there was a handgun in the vehicle. Evidence developed at trial suggested that this handgun was used to murder Smalley.

In addition, Ross attempted to introduce evidence of statements purportedly made by Coulter in which Coulter admitted guilt and exonerated Ross. Thus, because both defendants developed evidence that the other was the person wearing the red beanie and Ross's theory of defense was based on evidence that Coulter admitted guilt, exonerated Ross, and had possession of the murder weapon and the vehicle found near the crime scene, Ross's and Coulter's defenses were so antagonistic as to be mutually exclusive. As a result, this mutual exclusivity caused "a serious risk that [the] joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence," *Chartier*, 124 Nev. at 765, 191 P.3d at 1185 (internal quotations omitted), because the acceptance of Ross's theory would cause a risk that it would necessarily reject Coulter's theory of defense. Therefore, the district court abused its discretion by denying Coulter's motion to sever the trials. As a result, reversal is warranted, and we order the district court to sever Coulter's and Ross's trials on remand.

*Conclusion*

Multiple irregular events involving jurors and the district court significantly undermined Coulter's right to a fair trial and caused a

structural error. In addition, the district court abused its discretion by refusing to sever Coulter's and Ross's trials. Therefore, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.[2]

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc: Hon. Michelle Leavitt, District Judge
Christopher R. Oram
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

_____

[2]On remand, we instruct the district court clerk to reassign this case to a different department.